# Commonwealth v. Douglass.  Douglass v. Commonwealth.

APPEALS FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. REPEAL OF LOTTERY FRANCHISE—IMPAIRMENT OF OBLIGATION OF CONTRACTS.—The State in the granting of a lottery franchise exercises its police and not its contractual powers, and such a grant is only a privilege or license, and the Legislature may, in the interest of good order and morals, revoke the privilege and repeal the grant, although pecuniary interests have been acquired under and by authority of the grant.  The inhibition of the Federal Constitution against the passage of laws impairing the obligation of contracts, relates to "property rights" and not to subjects purely "governmental."  (Stone v. Mississippi, 101 U. S., 814.)

2. RES ADJUDICATA.—The question is not res adjudicata by reason of former decisions of this court to the effect that the purchase of the franchise by the authority of the Legislature created a contract that could not, under the Federal Constitution, be revoked, because those decisions have been virtually overruled by the Supreme Court of the United States.

WM. J. HENDRICK FOR COMMONWEALTH.

1. Upon the plea of res adjudicata in the case of the Henry Academy

---

* This opinion was affirmed on appeal to the U. S. Supreme Court.  See opinion of that Court in 168 U. S. 488.

and Female College Lottery, the judgment of the court below is clearly sustained by abundant authority. In *quo warranto* the burden is on the defendant to show such a state of facts as invests him with the complete legal title to the franchise in question. And while in Kentucky the writ of *quo warranto*, or an information in the nature of a *quo warranto*, is superseded by an ordinary action to vacate or repeal charters, and to prevent the usurpation of an office or franchise (Civil Code, secs. 480 to 485), the rules applicable to the practice in *quo warranto*, or information in the nature of *quo warranto*, remain in full force except so far as modified by our Code of Practice. (People v. Rensselaer & Saratoga R. Co., 15 Wend., 133; s. c. 30 Am. Dec., 1 and note; People v. Richardson, 4 Cow., 118; Bank of Auburn v. Aikin, 18 John, 137; State v. Harris, 36 Am. Dec., 460; People v. Utica Ins. Co., 15 John, 358; Utica Ins. Co. v. Scott, 8 Cow., 720; Commonwealth v. City of Frankfort, 13 Bush, 186; Speed v. Braxtell, 7 Mon., 575; McLain v. French, 3 Mon., 386; Eastin v. Rucker, 3 J. J. M., 234; Troutman v. Vernon, 1 Bush, 484.)

2. The cases cited by defendant from Missouri and Louisiana fully sustain the contention of appellee Douglass as to the validity of lottery contracts, but outside of Kentucky these are the only lottery contracts which have been sustained by the courts of any State in the Union. The case of Stone v. Mississippi, 101 U. S., 814, has formed the basis of many adverse opinions, among which the following may be taken as illustrations: State v. Woodward, 89 Ind., 110; Moore v. Mississippi, 48 Miss., 147; Mississippi v. Musgrove, 44 Miss., 833; Boyd v. State, 53 Ala., 612; Boyd v. Alabama, 94 U. S., 645; Bass v. Mayor of Nashville, Meigs, 421.

3. The contract sought to be protected by this appeal was made touching a subject of governmental power and functions about which it was unlawful to contract, or if lawful to contract, with full notice to everybody that the State might at any time resume control of the whole subject in the exercise of her police power.

As to the limit of this power, see: Tiedman's Limitation Police Power, sec. 1; *Idem*, sec. 2; Lake View v. Rose Hill Cemetery, 70 Ill., 192; State v. Nuges, 47 Me., 189; New Orleans Gas Co. v. Hart, 8 Am. St. Rep., 544; People v. Budd, 15 Am. St. Rep., 460; State v. Moore, 17 Am. St. Rep., 696; People v. Squire, 1 Am. St. Rep., 893; State v. Yopp, 2 Am. St. Rep., 305; People v. Wagner, 24 Am. St. Rep., 141; Butler v. Chambers, 1 Am. St.

Rep., 638; New Orleans v. Boyle, 23 La., 740; Green v. Savannah, 6 Ga., 1; *In re* Ruth., 32 Iowa, 250; Patterson v. Kennedy, 97 U. S., 501; Railroad Co. v. Richmond, 96 U. S., 521; Water Works Co. v. Sugar Works Co., 35 La. Ann., 1114; N. O. Water Works Co. v. St. Tammany Water Works Co., 14 Fed. Rep., 194.

4. The grant of the Commonwealth to the city of Frankford by the act of 1872 was, as are all lottery grants, a mere license. (Gregory v. Trustees Shelby College, 2 Met.; 579; Phalen v. Virginia, 8 How., 166; Moore v. The State, 48 Miss., 161; Boyd v. The State, 53 Ala., 615; Boyd v. Alabama, 94 U. S., 650; Miss. Society v. Musgrove, 44 Miss., 836; State v. Norris, 77 N. C., 572; Moore v. Mississippi, 48 Miss.; Reynolds v. Glory, 26 Conn., 179; Tell v. State, 42 Md., 519; Stone v. Mississippi, 101 U. S., 831; Commonwealth v. City of Frankfort, 13 Bush, 192; Stickrod v. Commonwealth, 86 Ky., 285.)

5. To the plea of *stare decisis* under the decisions in Kentucky there is this conclusive answer: That while it is true that this court has sustained such contracts under lottery grants similar to that pleaded in this case, such decisions were made at a time when the science of law and government, especially in the domain of police power and regulation, had not begun, much less reached the limits of its present development. The contention of counsel for appellee Douglass takes no account of growth, development and progression in the law. (Vaughn v. Hopson, 10 Bush, 337, overruling Patten v. McCane, 15 B. M., 444.)

6. The contract of the appellee Douglass provides by its own terms for the contingency of legislative or judicial interference and was made by the parties with the evident understanding that the Legislature might interfere.

R. REID ROGERS ON SAME SIDE.

1. Answer does not allege that lottery franchise in hands of appellee is unexhausted. This is required by the rule in Commonwealth v. Simmons, 13 Bush, 193.

2. Lottery franchise is a personal privilege that can not be alienated without consent of the Legislature. Though the city of Frankfort was authorized to sell and convey to Stewart; neither Stewart nor his wife was authorized to sell and convey to appellee. Appellee's title is then illegal so far as the State is concerned.

Commonwealth v. Douglass.    Douglass v. Commonwealth.

3. In the nature of things, none of the contracts in this case were susceptible of violation by the particular adverse legislation in question, as all were executed. Appellee's rights, if any, are property rights secured by purchase and protected by the Fourteenth amendment alone (Fletcher v. Peck, 6 Cranch, 87; Fisher v. Whitney, 13 Wall., 63; Cooley's Const. Lim., 341). The true question in this case then is whether private property can under any circumstances be taken for public use without due process of the law, of which taking without compensation, may be said to be evidence. Now, lotteries are recognized as being immoral in their tendencies. (Phalen v. Va., 8 How., 167; Gregory v. Trustees, 2 Met., 598; Acts 1816, vol. 2, page 1150.) The regulation of morals pertain to the police power, resident in the State government. (Beer Co. v. Mass., 97 U. S., 33; Butchers' Union v. Crescent City Co., 111 U. S., 757.) The Fourteenth Amendment was not designed to interfere with the police powers of the State when exercised for the promotion of the morals of the people, even though private property be confiscated. (Barbier v. Connelly, 113 U. S., 31; Powell v. Penn., 127 U. S., 683;) nor indeed does any other portion of the Federal Constitution interfere with this power (Butchers' Union v. Cres. City, 111 U. S., 757; Stone v. Miss., 101 U. S., 816; Gas Co. v. Light Co., 115 U. S., 672); therefore legislation confiscating lottery rights can not offend the Federal Constitution, nor, of course, a State Constitution which provides by its terms for their destruction. The only question in all such cases is whether the means employed are in fact calculated to attain the end sought—the improvement of morals. (Powell v. Penn., 127 U. S., 683.) Instances where private property once held and used with the consent of the Legislature has been destroyed in the cause of health and morals without paying owner compensation. (Powell v. Penn., *supra*, S. C., 114 Pa. St., 265; 77 Mo., 110; 36 Minn., 69 (Oleomargarine cases); Mughs v. Kansas, 123 U. S., 623; Kidd v. Pearson, 128 U. S., 16; Stickrod v. Com., 86 Ky., 285; Burnside v. Lincoln Co., *id.*, 429.)

4. But as a question of contract rights appellee has no indefeasible title against the State. He could only buy what others were empowered to sell, which in this instance was only a license or estate at will.    (Gregory v. Trustees, 2 Met., 589, shown to be unsound.)

5. Stone v. Miss., 101 U. S., 816, not distinguishable from the present case.

FRANK PARSONS of COUNSEL ON SAME SIDE.

J. G. CARLISLE, D. W. SANDERS, THOMAS H. HINES, MUIR, HEYMAN & MUIR, KOHN, BAIRD & SPECKERT FOR APPELLEE DOUGLASS.

1. The sale of a lottery privilege when authorized by an act of the Legislature vests in the purchaser an indefeasible right of contract which can not be repealed or modified by a subsequent legislative enactment or constitutional prohibition.   (Bass v. Mayor of Nashville, Meigs, 421; State v. Phalen & Payne, 3 Harr (Del.), 441; Phalen v. Com., 1 Robinson's, 713; Davis v. Caldwell, &c., 2 Robertson (La.), 271; Miss. Society of A. S. v. Musgrove, 44 Miss., 837; Boyd v. State, 46 Ala., 333; State v. Hawthorn, 9 Mo., 393; State v. Mirrow, 26 Mo., 131; State v. Miller, 50 Mo., 132; State v. Miller, 66 Mo., 329; Johffe v. The Steamship Co., 2 Wall., 450; White v. Hart, 13 Wall.; Osborne v. Nicholson, 13 Wall., 654; Boyce v. Sabler, 18 Wall., 546; Delmas v. Ins. Co., 14 Wall., 661; Gunn v. Barry, 15 Wall., 610.)

   Adjudications in Kentucky:   Gregory, Extr. v. Trustees of Shelby College Lottery, 2 Met., 589; Public Library Case, Nov. 1, 1877; Webb v. Com., ms. op., Sept, 11, 1878; Com. v. Douglass, ms. op., Nov, 25, 1882; Com. v. Whipps, 80 Ky., 269; Laurence v. Simmons, ms. op., 1888; Meredith v. Barron, 2 Ky. Law Rep., 208.)   The case of Stone v. Mississippi, 101 U. S., 814, as explained by the later case of City of New Orleans v. Houston, 119 U. S., 265, does not militate against the view here contended for.

2. The matter in dispute is *res adjudicata* by virtue of the decision of this court in Com. v. City of Frankfort, ms. op., Feb. 27, 1878; Cooley's Const., Limit., p. 58; Commiss. of Sinking Fund v. Green & Barren River Nav. Co., 79 Ky., 82; Louisville Water Co. v. Clark, 143 U. S., 16; Snapp v. Snapp., 10 Ky. Law Rep., 600.   A State is as much bound by judgment as an individual.   (Utica Ins. Co. v. Scott, 8 Cow., 709; Hart v. Harvey, 32 Barb., 67; Hobson, &c. v. Com., 2 Duv., 172.)

3. The rule of *stare decisis* applies:   Cooley's Const. Limit., p. 61; Nelson v. Allen, 1 Yerg., 376; Louisiana v: Pilsbury, 105 U. S., 297; Olcott v. The Supervisors, 16 Wall., 690; Ohio Life & Trust Co., v. Debott, 16 How., 432; Farrier v. New England Mortgage Security Co., 33 Cent. L. J., 190; Kneeland v. City of Milwaukee, 15 Wis., 454; Lenth's heirs v. Thomas' heirs, 7 Mon., 61; Tribble v. Laird, 7 Mon., 455; Franklin County Court v. L. & N. R. R. Co., 84 Ky.; Franklin County Court v. Deposit Bank of Frankfort, 87 Ky., 380; Barbier v. City of Louisville, 83 Ky., 95.

CHIEF JUSTICE BENNETT DELIVERED THE OPINION OF THE COURT.

These proceedings were commenced and prosecuted by the Commonwealth to prevent the usurpation of the franchise claimed by Douglass to operate said lotteries. It seems that the Legislature in 1850 authorized J. N. Webb to raise money by lottery for the benefit of the Henry Academy and Henry Female College.

The third section of the act empowered the grantees to sell the scheme, which they did: and which fell into the hands, by purchase, of the appellant Douglass, who proceeded to operate the same under said grant. He claims that the Legislature having authorized the sale of the franchise, and he having become the purchaser thereof, his right to it became a vested right, which the Legislature could not thereafter take away, because it would be impairment of the obligation of contracts which article 1, section 10 of the Constitution of the United States expressly forbids. The lower court upon the hearing of the case decided that the grant had expired by limitation, and that decision must stand and is affirmed. In 1838 the Legislature granted the privilege to certain gentlemen to raise money by lottery for the benefit of the city schools of Frankfort, and in 1872 the said act was amended so as to allow the board of councilmen of the city of Frankfort to sell and convey the privileges granted for the purposes mentioned.

And the appellee, in 1875, purchased all the lottery franchises and privileges conferred by the act of 1838, and also, the amendatory act of 1869.

The appellee, Dougless, contends that he was the

purchaser of said franchise and claims that by reason of the act authorizing the sale of said lottery and the purchase thereof, he acquired a vested right which the Legislature could not take away by its act of 1890 repealing said franchise, and relies upon article 1, section 10 of the Federal Constitution, which prohibits the States from passing any laws impairing the obligation of contracts as sustaining his contention and the decisions of this court thus construing his purchase.

This court in the case of Gregory v. The Trustees of the Shelby College Lottery, 2 Met., 598, decided that a lottery grant might be repealed by a subsequent Legislature, unless rights had been acquired and liabilities incurred upon the faith of the privileges conferred by the grant; in which case the rights thus acquired and liabilities incurred become contractual which the provision, *supra*, protected from repeal by subsequent legislation. The appellant contends that the grant of the lottery privilege by the State was an exercise of its police, nor its contractual, power, which is inherently lodged in the State for the promotion and protection of its welfare and happiness, which the State can not surrender and barter away, either as a gratuity or for pay. That while the Legislature may, in the exercise of its police power, grant a lottery privilege, the grant is only a privilege or license, not contractual, and a subsequent Legislature, in the interest of good order and morals, may revoke the privilege thus granted and repeal the grant, although pecuniary interests have been acquired under and by authority of the grant.

It seems that this court, in the Gregory case, *supra*, decided expressly that where rights had been acquired and liabilities incurred upon the faith of the lottery grant such rights and liabilities should be regarded as contracts which are protected by the Federal Constitution against impairment by the State Legislature and which should be upheld to the extent, at least, that the party has the right to enjoy the right thus acquired until he realizes his money thus invested out of the lottery business.   The famous Dartmouth College case, and others that have followed it, is invoked to sustain this position.   The other cases upon the same subject, subsequently rendered by this court, repeat the same doctrine.   But the Supreme Court of the United States, in Stone v. Mississippi, 101 Supreme Court Reports, 814, in construing the provision of the Federal Constitution that declares that the States shall pass no laws impairing the obligation of contracts, held that the inhibition related to "property rights" and not to matters that were "governmental." The court there held, in strong and emphatic language, that lotteries being a species of gambling, were vicious and demoralizing in the community, and that as it was the trust duty of the State government to protect and promote the public health and morals it could not sell, barter or give away that duty, and that the utmost power the Legislature could exercise was to grant a license to carry on that species of gambling which only protected the licensee from the pains and penalities imposed upon that species of gambling, during the existence of the license,

and that the Legislature granting the license had no power to bind a subsequent Legislature to its line of policy upon these subjects, and that a subsequent Legislature might repeal the grant of the license, although it had been paid for.

It seems to us that this decision, defining the provision of the Federal Constitution as to what subjects are contracts and protected by it, and that lottery grants, although paid for, are not protected by said provision, is binding upon this court and has the effect to overrule its decisions holding the contrary view.

But apart from the binding force of the decision, it seems that its logic is conclusive and convincing in drawing the distincton between the contractual and governmental power of the States, to wit: That the provision of the Federal Constitution in reference to contracts only inhibits the States from passing laws impairing the obligation of such contracts as relate to propery rights, but not to subjects that are purely governmental. The reason for this distinction must be apparent to all, for, when we consider that honesty, morality, religion and education are the main pillars of the State, and for the protection and promotion of which government was instituted among men, it at once strikes the mind that the government, through its agents, can not throw off these trust duties by selling, bartering or giving them away. The preservation of of the trust is essential to the happiness and welfare of the beneficiaries, which the trustees have no power to sell or give away. If it be conceded that the State can

give, sell and barter any one of them, it follows that it can thus surrender its control of all and convert the State into dens of bawdy houses, gambling shops, and other places of vice and demoralization, provided the grantees paid for the privileges, and thus deprive the State of its power to repeal the grants and all control of the subjects as far as the grantees are concerned, and the trust duty of protecting and fostering the honesty, health, morals and good order of the State would be cast to the winds, and vice and crime would triumph in their stead.    Now it seems to us that the essential principles of self-preservation forbid that the Commonwealth should possess a power so revolting, because destructive of the main pillars of government.

The power of the State to grant a license to carry on any species of gambling, with the privilege of revoking the same at any time, has an unwholesome effect upon the community and tends to make honest men revolt at the injustice of punishing others for engaging in like vices.    We have, for instance, at this day men confined in the State penitentiary for setting up and carrying on gambling shops whose tendencies are not much more demoralizing, if any, than the licensed lottery operator, who goes free under the protection of the law.    The one wears a felon's garb and the other is protected by license, which he claims as an irrevocable contract because he has paid for the privilege.  The privilege ought never to be granted, and under the present constitution can never be.    As said, to impress the privilege with the idea of contract because it was paid for might fill

the whole State, and especially the cities, with gambling shops and enterprises, protected by contract, and the few gamblers that might not be thus protected and who would be liable to be punished for gambling, would not be, because it would strike the honest man as unjust to punish the poor wretch for doing that which was made lawful for others to do by paying for the privilege. As said, we are bound by the construction given to the provision of the Federal Constitution by the Supreme Court relating to the impairment of contracts by the States to the effect that the provision does not relate to lottery franchises, though paid for, and that the matter of such grants being strictly within the police power of the State, the State could not sell or barter away its control of the subject.

It is contended that the subject of the appellees' contract right is *res adjudicata* by this court.   It is sufficient to say that the State had no constitutional right to contract its police power away, consequently the appellee made his purchase of the franchise subject to the right of the State to repeal it, and the decision of this court that the appellees' purchase of the franchise by the authority of the Legislature created a contract that could not, under the Federal Constitution, be revoked, having been virtually overruled by the Supreme Court of the United States destroys the contention of *res adjudicata,* and while the judge of the court below was loyal to this court in following the opinions heretofore rendered, we must affirm the judgment in the Henry county lottery case, and reverse his judgment as to the

Frankfort lottery and remand the case for further proceedings in conformity with this opinion.